

One Lincoln Center | Syracuse, NY 13202-1355 | **bsk.com**

**JENNIFER SCHWARTZOTT, ESQ.**
jschwartzott@bsk.com

June 20, 2024

<u>**VIA ELECTRONIC FILING**</u>

Hon. Reggie B. Walton
United State District Court
District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:    *SRC, Inc. v. Theia Group, Inc.;* Case No: 21-cv-02329-RBW

Dear Judge Walton:

We submit this status report on behalf of plaintiff SRC, Inc. ("SRC").

It is our understanding that the receivership stay filed in this action (*see, e.g.,* ECF Doc. No. 15) has been further extended by Judge Castel in the S.D.N.Y. and is still in effect.

Specifically, it is our understanding that (a) the stay was extended by paragraph 21 on page 38 of Judge Castel's order dated October 26, 2023, a copy of which is attached hereto as **Exhibit A**; and (b) that the conditions for lifting the stay as set forth in that paragraph of Judge Castel's order have not yet occurred.

We contacted the receiver's counsel of record in this action, Daniel Z. Herbst, Esq., by emails on June 5 and 13, 2024, regarding this Court's request for a joint status report, but received no response. For that reason, we are submitting this status report solely on behalf of plaintiff SRC.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC     BOND, SCHOENECK & KING, PLLC

*/s/Jennifer Schwartzott*              */s/Louis Orbach*

Jennifer Schwartzott              Louis Orbach
JS/cmd                        LO/cmd

17989587.v2

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                      Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS A,
INC., d/b/a "THORIAN HOLDINGS,"

                    Defendants.

21 Civ. 6995 (PKC)

**Re: Doc. 365**

**ORDER (I) APPROVING THE SALE OF THE RECEIVERSHIP ENTITIES' ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES,
AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

This Court having considered the *Motion of Michael Fuqua, as Receiver* (the "Receiver"),

*for Entry of (A) an Order (I) Approving Bidding Procedures in Connection With the Sale of All or*

*Substantially All of the Receivership Entities' Assets, (II) Scheduling an Auction for, and Hearing*

*to Approve, the Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Further Extending*

*the Receivership Stay Through August 31, 2023, and (V) Granting Related Relief; and (B) an*

*Order (I) Authorizing the Sale Free and Clear of Liens, Claims, Rights, Encumbrances, and Other*

*Interests, and (II) Granting Related Relief* (Doc. 357) (the "Initial Sale Motion"), and the *Motion*

*of Michael Fuqua, as Receiver, for Entry of an Order (I) Authorizing the Sale of Substantially All*

*of the Receivership Entities' Assets to LTS Systems, LLC Free and Clear of Liens, Claims, Rights,*

*Encumbrances, and Other Interests, (II) Approving Asset Purchase Agreement, and (III) Granting*

*Related Relief* (Doc. 365) (the "Sale Motion"),[1] modifying, to the extent necessary, the Bidding

Procedures (as defined herein), and upon consideration of:

a. the *Declaration of Michael Fuqua, as Receiver, in Support of the Motion of Michael Fuqua, as Receiver, for an Order (I) Approving Bidding Procedures in Connection With the Sale of All or Substantially All of the Receivership Entities' Assets, (II) Scheduling an Auction for, and Hearing to Approve, the Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Further Extending the Receivership Stay Through August 31, 2023, and (V) Granting Related Relief* (Doc. 359);

b. the *Certificate of Service of Initial Sale Motion* (Doc. 361);

c. the *Order (I) Approving Bidding Procedures In Connection With the Sale of All or Substantially All of the Receivership Entities' Assets, (II) Scheduling an Auction for, and Hearing to Approve, the Sale, (III) Approving Notice of Auction and Sale Hearing, (IV) Further Extending the Receivership Stay Through [August] 31, 2023 and (V) Granting Related Relief* (Doc. 363) (the "Bidding Procedures Order") approving the procedures for bidding (the "Bidding Procedures") on the Acquired Assets (as defined in the Purchase Agreement);

d. the *Asset Purchase Agreement*, dated as of August 12, 2023, by and among LTS Systems, LLC, together with its designees and/or assignees (the "Buyer") and Theia Group, Inc. d/b/a "Thorian Group" and/or "Cypherian," a Delaware corporation ("TGI"), Theia Aviation, LLC, a Delaware limited liability company ("TA"), and Theia Holdings A, Inc. d/b/a "Thorian Holdings," a Delaware corporation ("THA," and together with TGI and TA, the "Receivership Entities"), as "Sellers," a copy of which is annexed as **Exhibit 1** hereto (including all exhibits and schedules, and as may be amended or modified from time to time, including pursuant to the terms of this Approval Order, the "Purchase Agreement" and the transaction contemplated thereunder, the "Sale Transaction");

e. the *Notice of (I) Cancellation of Auction, (II) Designation of FCS Credit Bid as Successful Bid, (III) Sale Objection Deadline, and (IV) Sale Hearing* (Doc. 364), pursuant to which the Receiver, in accordance with the Bidding Procedures Order, designated the Buyer as the Successful Bidder and the Purchase Agreement as the Successful Bid;

f. the *Memorandum of Law in Support of the Motion of Michael Fuqua, as Receiver for Entry of an Order (I) Authorizing the Sale of Substantially All of the Receivership Entities' Assets to LTS Systems, LLC Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) Approving Asset Purchase*

---

[1] Capitalized terms used but not defined in this Approval Order have the meanings given to them in the Bidding Procedures, the Sale Motion, the Memorandum of Law, or the Purchase Agreement, as the context requires.

*Agreement, and (III) Granting Related Relief* (Doc. 366) (the "<u>Memorandum of Law</u>");

g.  the *Declaration of Michael Fuqua, as Receiver, in Support of Entry of Order (I) Authorizing the Sale of Substantially All of the Receivership Entities' Assets to LTS Systems, LLC Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) Approving Asset Purchase Agreement, and (III) Granting Related Relief* (Doc. 367) (the "<u>Receiver's Sale Declaration</u>");

h.  the *Declaration of Authorized Signatory* (Doc. 368); and

i.  all of the proceedings had before this Court (including any testimony or other evidence proffered or adduced on the record at the Sale Hearing, if any);

[and the sale hearing (the "<u>Sale Hearing</u>") having been held on [•], 2023, to consider the remaining relief requested in the Sale Motion and approval of the Purchase Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing]; and this Court having determined that the relief requested in the Sale Motion is in the best interests of the Receivership Entities, their estates, and other parties-in-interest; and it appearing that proper and adequate notice of the Sale Motion has been given under the circumstances and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.  <u>Jurisdiction</u>. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 754 and Rule 66 of the Federal Rules of Civil Procedure. Venue is proper before the Court pursuant to 28 U.S.C. § 1491.

B.  <u>Final Order</u>. This Approval Order constitutes a final order, not an interlocutory order, within the meaning of 28 U.S.C. § 1292.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). To the extent any of the findings of fact set forth herein constitute conclusions of law, they are hereby adopted as such. To the extent any of the conclusions of law set forth herein constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by this Court on the record at the Sale Hearing, if any, are hereby incorporated, to the extent they are not inconsistent herewith.

C.    Statutory and Legal Predicates. The statutory and legal predicates for the relief requested in the Sale Motion are 28 U.S.C. §§ 959(b), 2001, and 2004, and Paragraph 6 of the Receivership Order (as defined herein). The circumstances of this Receivership Action do not require compliance with the procedures set forth in 28 U.S.C. § 2001.

D.    Notice. Proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale Transaction has been provided in accordance with 28 U.S.C. § 2001 and in compliance with the Local Rules of United States District Courts for the Southern and Eastern Districts of New York and the Bidding Procedures Order, including to the Notice Parties (as defined herein). The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Purchase Agreement, or the Sale Transaction is required. The disclosures made by the Receivership Entities concerning the Purchase Agreement, the Sale Transaction, and the Sale Hearing were sufficient, complete, and adequate.

E.    Opportunity to be Heard. A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and the Sale Transaction has been afforded to all interested Persons, including the following: (i) all Persons that are known by the Receiver or his advisors to have expressed an interest to the Receivership Entities in a Sale Transaction involving any of the Acquired Assets during the past twelve (12) months, including any Person that submitted a bid for any of the Acquired Assets; (ii) all Persons that have or may have asserted any Lien, Claim, right, Encumbrance (as defined herein), or other interest in the Acquired Assets, including, for the avoidance of doubt, FCS, Aithre, and holders of Claims under Secured Note Purchase Agreements and Secured Convertible Promissory Notes (as may be amended, restated, or supplemented from time to time); (iii) all of the Receivership Entities' creditors (for whom identifying information

and addresses are available to the Receiver); (iv) any governmental authority known to have a

Claim against the Receivership Entities or their estates; (v) all applicable federal, state, and local

taxing authorities, including without limitation, the Internal Revenue Service; (vi) the United

States Attorney's Office for the Southern District of New York and District of Columbia; (vii) all

parties that have filed a notice of appearance in the Receivership Action; and (viii) all other parties

as directed by the Court (the parties listed in (i) through (viii), collectively, the "Notice Parties").

Objections, if any, to the Sale Motion have been withdrawn or resolved and, to the extent not

withdrawn or resolved, are hereby overruled.

      F.    The Receivership Case. On August 19, 2021, Plaintiff FCS Advisors, LLC

commenced this action by filing its *Complaint* (Doc. 1) against the Receivership Entities. On

November 8, 2021, the Court entered its *Order Appointing Michael Fuqua as Receiver* (Doc. 117),

appointing Michael Fuqua as federal equity receiver for each of the Receivership Entities and for

all assets of, in the possession of, under the control of, or held in the name of the Receivership

Entities (the "Receivership Order"). The Receivership Order provides, in pertinent part, that the

Receiver—

> may seek a bona fide purchaser of the Receivership Entities' Federal
> Communications Commission ("FCC") License Assets, as defined
> in the parties' Secured Note and Purchase and Security Agreement,
> as well as seek from the FCC and every other applicable government
> authority an involuntary transfer of control of such FCC License
> Assets and to take all steps necessary to effectuate a transfer or sale
> of the assets, except any transfer of control of such FCC License
> shall be submitted to the Court for approval.

*See* Doc. 117, ¶ 7. The Sale Transaction is consistent with the powers granted to the Receiver

under the Receivership Order.

      G.    Marketing Process. As demonstrated by (i) the Receiver's Sale Declaration, (ii) the

testimony and other evidence proffered or adduced at the Sale Hearing, if any, and (iii) the

representations of counsel made on the record at the Sale Hearing, if any, the Receiver and his advisors thoroughly marketed the Receivership Entities' assets (including the Acquired Assets) and conducted the marketing and sale process as set forth in, and in accordance with, the Sale Motion and the Bidding Procedures Order. In addition, the Receivership Entities' assets have been publicly available for sale for an extensive time period. Accordingly, based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Receivership Entities' assets (including the Acquired Assets).

H.    <u>Compliance with and Modification of Bidding Procedures</u>. The Receiver conducted a fair and open sale process in a manner reasonably calculated to produce the highest or otherwise best offer for the Acquired Assets in compliance with the Bidding Procedures Order. The sale process and the Bidding Procedures were non-collusive and substantively and procedurally fair to all parties and to each Person entitled to participate in the Auction pursuant to the Bidding Procedures Order. All parties and each Person entitled to participate in the Auction pursuant to the Bidding Procedures Order were afforded notice and a full, fair, and reasonable opportunity to make a higher or otherwise better offer for some or all of the Acquired Assets. The Receiver, however, received only two bids. One bid for all of the Acquired Assets (as set forth in the Purchase Agreement) was determined ultimately to be a Qualified Bid. A second, lower bid for a portion of the Acquired Assets was determined not to be a Qualified Bid. The Bidding Procedures, as they may have been amended or modified, have been complied with in all material respects by the Receivership Entities and the Buyer.

I.    <u>Highest or Best Offer</u>. In accordance with the Bidding Procedures, the Receiver determined, in a valid and sound exercise of his business judgment, that the highest or otherwise

best Qualified Bid for the Acquired Assets was that of the Buyer under the Purchase Agreement. The consideration provided by the Buyer for the Acquired Assets provides fair and reasonable consideration to the Receivership Entities for the sale of the Acquired Assets and the assumption of all Assumed Liabilities (as defined and limited in the Purchase Agreement), and the performance of the other covenants set forth in the Purchase Agreement will provide a greater recovery for Receivership Entities' estates than would have been provided by any other available alternative.

Approval of the Sale Motion and the Purchase Agreement, and the prompt consummation of the transactions contemplated thereby, is in the best interests of the Receivership Entities, their estates, and other parties in interest.

J.     Business Judgment. The Receiver's decision to enter into, and consummate, the Purchase Agreement, and all ancillary documents filed therewith or described therein (collectively, the "Sale Documents"), constitutes a reasonable exercise of sound business judgment consistent with the Receiver's fiduciary duties, and such decision is in the best interests of the Receivership Entities, their estates, and other parties in interest. Good and sufficient reasons for the approval of the Purchase Agreement and all ancillary documents filed therewith or described therein have been demonstrated by the Receiver. The arguments of counsel made, and evidence presented, at the Sale Hearing, if any, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein. Such business reasons include, without limitation, the facts that: (i) the Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets; (ii) the Purchase Agreement presents the best opportunity to realize the value of the Receivership Entities and avoid a decline and devaluation of their assets; and

(iii) unless the Sale Transaction is concluded expeditiously as provided for in this Approval Order and pursuant to the Purchase Agreement, the Acquired Assets may decline in value.

K.     Court Approval Required. Entry of an Approval Order (as defined in the Purchase Agreement) approving and authorizing the Receivership Entities' entry into the Purchase Agreement and the Receivership Entities' performance of all the provisions thereof is a necessary condition precedent to the Buyer's consummation of the Sale Transaction.

L.     Immediate Effectiveness of Approval Order. Time is of the essence in effectuating the consummation of the Sale Transaction as contemplated herein. To maximize the value of the Acquired Assets, it is essential that the Sale Transaction occur promptly. The Receiver is authorized to enter into and close on the Sale Transaction immediately upon entry of this Approval Order and the satisfaction of the conditions to the effectiveness of this Approval Order stated in ¶ 24(c) hereof.

M.     Sale Free and Clear. Buyer would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated therein, if the sale of the Acquired Assets, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts, were not free and clear of all Encumbrances of any kind or nature whatsoever (except as expressly set forth in the Purchase Agreement with respect to Permitted Liens and Assumed Liabilities), or if the Buyer, or any of its affiliates or subsidiaries or successors, would, or in the future could be, liable for any of such Encumbrances (except as expressly set forth in the Purchase Agreement with respect to Permitted Liens and Assumed Liabilities).

As used in this Approval Order, the term "Encumbrances" includes all of the following, in each case to the extent against or with respect to the Receivership Entities or in, on, or against or with respect to any of the Acquired Assets:  liens (including Liens and any charge against or

interest in property to secure payment of a debt or performance of an obligation and whether consensual, statutory, possessory, judicial, or otherwise), claims (including (a) Claims, (b) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (c) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured), debts (including any Liability on any Claim), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, equitable interests, equitable rights, or interests of any kind or nature whatsoever (including equity interests), whether known or unknown, whether arising prior to or following the entry of the Receivership Order, choate or inchoate, filed or unfiled, secured or unsecured, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, consensual or non-consensual, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, statutory or non-statutory, legal or equitable, and whether imposed by agreement, understanding, at law, in equity, or otherwise, including, without limitation, (i) mortgages, deeds of trust, dedications, pledges, charges, security interests of whatever kind or nature, Liens (including, without limitation, mechanics', materialman's, or other similar Liens), assignments, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff, rights of use or possession, subleases, leases, instruments, indentures, conditional sale arrangements, title retention agreements, or any similar rights; (ii) all Claims, including, without limitation, all rights or causes of action (whether

at law or in equity), proceedings, judgments, orders, and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), charges, suits, warranties, guarantees, indemnities, rights of recovery, setoff, reimbursement, indemnity, or contribution, obligations, demands, restrictions, indemnification Claims, successor liability, product liability, environmental liability, tax liability, labor liability, *alter ego* liability, or Liabilities relating to any act or omission of the Receivership Entities or any other Person, consent rights, options, Contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, Liabilities, obligations, contractual rights and Claims, and labor, employment, and pension Claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Receivership Entities' or the Buyer's (or its successors' or assigns') interest in the Acquired Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Receivership Entities or any multiemployer plan to which the Receivership Entities has at any time contributed to or had any Liability or potential Liability; (vii) any other employee Claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, Claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor

Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code or any similar state Law, (i) state discrimination Laws, (j) state unemployment compensation Laws or any other similar state Laws, (k) any other state or federal benefits or Claims relating to any employment with the Receivership Entities' or any of its predecessors or (l) the WARN Act (29 U.S.C. §§ 2101, *et seq.*) or any state or other Laws of similar effect; (viii) any bulk sales or similar Laws; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or business of the Receivership Entities prior to Closing; (x) any unexpired and executory Contract or unexpired lease to which a Receivership Entity is a party that is not an Assigned Contract; (xi) any other Excluded Liabilities under the Purchase Agreement; and (xii) Encumbrances arising under or in connection with any acts, or failures to act, of the Receivership Entities or any of the Receivership Entities' predecessors, including, without limitation, Encumbrances arising under any doctrines of successor liability (to the greatest extent permitted by applicable Law), or transferee or vicarious liability, violations of the Securities Act of 1933, the Securities and Exchange Act of 1934, or other applicable securities Laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

The recitation, in the immediately preceding paragraph of this Approval Order, of specific agreements, plans, or statutes, is not intended, and shall not be construed, to limit the generality of

the categories of Liabilities, debts, commitments, or obligations referred to as "Encumbrances" therein.

Except for Assumed Liabilities and Permitted Liens, a sale of the Acquired Assets free and clear of Encumbrances and subject to the protections set forth in this Approval Order is necessary to maximize the value of the Acquired Assets. But for the protections afforded to the Buyer (including its assigns and successors) under this Approval Order, the Buyer would not have offered the consideration contemplated in the Purchase Agreement.

Those holders of Encumbrances (other than Permitted Liens and Assumed Liabilities) that did not object, or which withdrew their objections, to the Sale Motion are deemed to have consented to the Sale Transaction. Approval of the Purchase Agreement and consummation of the Sale Transaction free and clear of Encumbrances (other than Permitted Liens and Assumed Liabilities) is appropriate and is in the best interests of the Receivership Entities, their estates, and other parties in interest.

N.     Except as otherwise set forth in the Purchase Agreement, the Buyer and its successors and assigns shall have no obligations with respect to any Encumbrances against or in respect of any of the Receivership Entities or the Acquired Assets (other than Assumed Liabilities and Permitted Liens).

O.     The Buyer would not have entered into the Purchase Agreement and would not consummate the sale of the Acquired Assets, thus adversely affecting the Receivership Entities, their estates, and other parties in interest, if such sale was not free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Liens). A sale of the Acquired Assets, other than one free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Liens),

would yield substantially less value for the Receivership Entities' estates, with less certainty than the Sale Transaction.

       P.    <u>Arms'-length Sale Transaction</u>. Prior to accepting bids, PJT Partners, LP ("<u>PJT</u>"), a leading investment bank, conducted a public sale process on behalf of the Receivership Entities. The consideration to be paid by the Buyer under the Purchase Agreement constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets under the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, and the Laws of the United States, any state, territory, possession thereof, and the District of Columbia. The terms and conditions set forth in the Purchase Agreement and all ancillary documents filed therewith or described therein are fair and reasonable under the circumstances of this Receivership Action and were not entered into with the intent to, nor for the purpose of (nor do they have the effect of) hindering, delaying, or defrauding the Receivership Entities or their creditors under any applicable Laws. Neither the Receivership Entities nor the Buyer is entering into the Sale Documents or proposing to consummate the Sale Transaction (i) fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer Claims under the Laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable jurisdiction or (ii) with any fraudulent or otherwise improper purpose.

       Q.    <u>Good Faith</u>. The Buyer is not an insider of the Receivership Entities. The Receiver, on behalf of the Receivership Entities, and the Buyer and its management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and Representatives, all of the foregoing in such capacities, actively participated in the sale process in good faith. The Purchase Agreement between the Buyer and the Receivership Entities was

negotiated and entered into based upon arm's-length bargaining, without collusion or fraud, and in good faith. The Buyer is entering into the Sale Transaction in good faith and is a good faith purchaser, and otherwise has proceeded in good faith in all respects in connection with the Receivership Action. The Receiver, on behalf of the Receivership Entities' estates, was free to deal with any other party interested in purchasing some or all of the Acquired Assets. All payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed. Neither the Receiver nor the Buyer has engaged in any conduct that would cause or permit the Sale Transaction, the Purchase Agreement, or any related action or the transactions contemplated thereby to be avoidable or avoided or subject to monetary damages. The Buyer's prospective performance and payment of amounts owing under the Purchase Agreement will be undertaken in good faith and for valid business purposes and uses.

R.    <u>Corporate Authority</u>. The Receiver, on behalf of the Receivership Entities, has (i) full corporate or other power to execute, deliver, and perform his obligations under the Purchase Agreement and all other transactions contemplated thereby, and entry into the Purchase Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) all of the corporate or other power and authority necessary to consummate the Sale Transaction, and (iii) taken all actions necessary to authorize and approve the Purchase Agreement and the Sale Transaction. No further consents or approvals, other than those expressly provided for herein or in the Purchase Agreement, are required for the Receivership Entities to consummate such transaction or otherwise perform their obligations under the Purchase Agreement.

S.    The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of applicable Law, including, without limitation, 28 U.S.C. §§ 2001 and 2004.

T.      The Acquired Assets constitute property of the Receivership Entities' estates and title thereto is currently vested in the Receivership Entities' estates. The Receivership Entities are the sole and rightful owners of the Acquired Assets, and no other Person has any ownership right, title, or interest therein, subject to the Liens and Claims described in the (a) *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* (Doc. 206) entered on February 16, 2022 and (b) *Order (I) Authorizing Receiver to Enter Certain First Amendment to Receiver's Certificate Purchase and Security Agreement With FCS Advisors, LLC and (II) Granting Related Relief* (Doc. 329) entered on March 22, 2023 (together, the "Financing Orders"), including the Post-Receivership FCS Lien held by FCS, for itself and in its capacity as Administrative Agent, pursuant to the Loan Documents (as such terms are defined in the Financing Orders) and FCS, for itself and as agent under the NPA (as defined in the Financing Orders). The sale of the Acquired Assets to the Buyer will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the Purchase Agreement, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest the Buyer with all right, title, and interest of the Receivership Entities in and to the Acquired Assets, free and clear of all Encumbrances accruing or arising any time prior to the Closing Date (other than Permitted Liens and Assumed Liabilities).

U.      No Successor Liability. No sale, transfer, or other disposition of the Acquired Assets pursuant to the Purchase Agreement or entry into the Purchase Agreement will subject the Buyer or its affiliates or successors to any Liability or responsibility for any Claims, obligations of any kind or nature whatsoever, or any Encumbrances asserted against the Receivership Entities or the Receivership Entities' estates, or otherwise related to such Acquired Assets (other than the Assumed Liabilities and Permitted Liens) by reason of such transfer of such Acquired Assets to

Buyer, under any Laws, including any bulk-transfer Laws or any theory of successor or transferee Liability, antitrust, environmental, product line, *de facto* merger, or substantial continuity or similar theories. By virtue of the consummation of the transactions contemplated by the Purchase Agreement, (i) the Buyer is not a continuation of the Receivership Entities or their estates, there is no continuity or continuity of shareholders or enterprise between the Buyer and the Receivership Entities, and there is no common identity between the Receivership Entities and the Buyer, (ii) the Buyer is not holding itself out to the public as a continuation of the Receivership Entities or their estates, and (iii) the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Receivership Entities and/or the Receivership Entities' estates. Accordingly, the Buyer is not, and shall not be deemed, as a result of any action taken in connection with the Sale Transaction: (i) to the greatest extent permitted under applicable Law, to be a successor (or other such similarly situated party) to the Receivership Entities or their estates and, except with respect to Assumed Liabilities and Permitted Liens, the Buyer's acquisition of the Acquired Assets shall be free and clear of any "successor liability" Claims of any nature whatsoever; or (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Receivership Entities. The Buyer would not acquire the Acquired Assets but for the protections against any Claims based upon "successor liability" theories.

V.     <u>Assignment and/or Transfer of Assigned Contracts</u>. The assignment and/or transfer of the Assigned Contracts to the Buyer pursuant to the terms of this Approval Order is integral to the Purchase Agreement, is in the best interests of the Receivership Entities, their estates, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Receiver. The non-Receivership Entity counterparties to the Assigned Contracts that did

not object to the assignment or transfer of their applicable Assigned Contract, or to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Approval Order.

Pursuant to the Purchase Agreement, the Buyer may add or remove any Contract from Schedule 1.01(h) until 5:00 p.m. (prevailing Eastern Time) on the Final Determination Date, and Buyer may make such additions or deletions to Schedule 1.01(h) to (a) remove any Contract listed on Schedule 1.01(h), (b) add any additional Contract to Schedule 1.01(h), or (c) change the Cure Amount listed on Schedule 1.01(h). The Buyer would not have agreed to the Sale Transaction without such modification rights.

W.    No Third-Party Beneficiaries. Except with respect to any designee of the Buyer, each of which is an intended third-party beneficiary of the Purchase Agreement and this Approval Order, or as stated expressly in the Purchase Agreement, nothing in the Purchase Agreement creates any third-party beneficiary rights in any Person not a party to the Purchase Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    **Sale Motion Granted; Objections Overruled.**

a.    The relief requested in the Sale Motion is **GRANTED** and approved, and the Sale Transaction contemplated thereby and by the Purchase Agreement and related documents as amended is approved, in each case as set forth herein. Any remaining objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits with prejudice and denied, except that the objections of Liberty Mutual Insurance Company as surety have been resolved consensually and have not been waived, and notwithstanding any other provision of this Order, all of its rights and defenses arising under or as a result of its execution of any surety bond

on behalf of Seller or arising out of its status as surety under the applicable bond are fully preserved, and nothing in this Order shall be deemed to impair or waive such rights or defenses as surety, all of which are fully preserved. All parties and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

b.      This Court's findings of fact and conclusions of law in the Bidding Procedures Order and the record of the Sale Hearing, if any, are incorporated herein by reference.

2.      **The Purchase Agreement Is Approved and Authorized.**

a.      The Purchase Agreement, including Amendment No. 1 to Asset Purchase Agreement (attached hereto as Exhibit 3), and all ancillary documents filed therewith or described therein are approved. The circumstances present in this Receivership Action, including the sale process conducted by the Receiver and the time during which the Receivership Entities' assets have been for sale, are such that the requirements of 28 U.S.C. § 2001, as applicable to the Sale Transaction pursuant to 28 U.S.C. § 2004, are hereby waived.

b.      The consideration provided by the Buyer for the Acquired Assets under the Purchase Agreement, including the assumption of the Assumed Liabilities, constitutes reasonably equivalent value and fair and adequate consideration for the Acquired Assets.

c.      The Receivership Entities are hereby authorized, empowered, and directed to perform under this Approval Order, the Sale Documents, and each of the transactions contemplated thereby is hereby approved in its entirety and is incorporated herein by reference. The failure to include specifically any particular provision of the Purchase Agreement in this Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement, and all of its provisions and the payments and transactions provided for therein and herein shall be authorized and approved in their entirety.

Likewise, all of the provisions of this Approval Order are non-severable and mutually dependent. The Sale Transaction authorized herein shall be of full force and effect, regardless of the Receivership Entities' standing in any jurisdiction in which a Receivership Entity is formed or authorized to transact business.

       d.     Subject to the provisions of this Approval Order, the Receivership Entities and the Buyer, and each of their respective officers, employees, and agents, are hereby authorized to consummate the Sale Transaction in accordance with the Sale Documents.

       e.     Without any further corporate action or orders of this Court, the Receivership Entities, the Buyer, and each of their respective officers, employees, agents, members, and managers are hereby authorized and directed to fully perform under, consummate, and implement the terms of the Sale Documents, together with any and all additional instruments and documents and actions that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement and all ancillary agreements filed therewith or described therein, this Approval Order, and the Sale Transaction.

3.    **Sale and Transfer Free and Clear of Encumbrances.**

       a.     Upon the Closing Date, all of the Receivership Entities' legal, equitable, and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Buyer free and clear of Encumbrances (other than Assumed Liabilities and Permitted Liens). On the Closing Date, this Approval Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets to the Buyer and shall vest the Buyer with good and marketable title to the Acquired Assets. Upon and as of the Closing Date, such transfer shall

constitute a legal, valid, binding, and effective transfer of such Acquired Assets and Buyer shall take title to and possession of such Acquired Assets free and clear of all Encumbrances (except Permitted Liens and Assumed Liabilities). Upon and as of the Closing Date, the Buyer shall be deemed to own all right, title and interest to the Receivership Claims and shall be deemed to have, and shall have, all requisite standing, power, and authority in any court of competent jurisdiction to bring, assert, file, prosecute, pursue, and settle any Receivership Claim and any other Claim transferred to Buyer in connection with the Sale Transaction. To the extent (if any) necessary to permit the Buyer to bring, assert, file, prosecute, pursue, and settle any Receivership Claim, the Buyer shall be deemed to be acting as and for each of the Receivership Entities (or in the capacity as receiver thereof) as to the Receivership Claims prior to or after the Court's dismissal of the Receivership Action.

       b.     All Encumbrances shall attach solely to any cash proceeds of the Sale Transaction in excess of the amounts necessary to pay all costs of administering the Receivership Entities' estates in the order of their priority, with the same validity, force, and effect that they previously attached (immediately before the Closing Date) against the Acquired Assets, but only to the extent there are any proceeds of the Sale Transaction remaining after the indefeasible payment in full in cash of the Obligations (as defined in the Financing Orders) and the incurred and to be incurred costs of administering the Receivership Entities' estates.

       c.     The holders of Claims related solely to Assumed Liabilities and Permitted Liens shall have the right to seek payment directly from the Buyer on account of such Assumed Liabilities and Permitted Liens; provided, however, that the Buyer reserves any and all rights, defenses, or objections held at any time by the Receivership Entities and/or the Buyer with regard

to such Assumed Liabilities, including the Buyer's rights hereunder and under the Purchase Agreement.

        d.      Except as otherwise provided in the Purchase Agreement, the Receiver makes no representation or warranty, express or implied, regarding any aspect of the Acquired Assets, and, without limiting the foregoing, (i) except as expressly stated in the Purchase Agreement, the Receiver makes no representation or warranty in respect of the Acquired Assets relating to title, possession, quiet enjoyment, quality, quantity, collectability, merchantability or fitness for a particular use, and (ii) the Acquired Assets are being sold and transferred under the Purchase Agreement **AS IS, WHERE IS, WITHOUT RECOURSE TO THE RECEIVER, AND WITH ALL FAULTS AND DEFECTS**.

4.    **Approval Order Binding.**

        a.      This Approval Order and the terms and provisions of the Sale Documents shall be binding on all of the Receivership Entities' creditors, the Receivership Entities and their estates, all of holders secured debt, unsecured debt, and equity interests in the Receivership Entities, all holders of Claims (whether known or unknown) against the Receivership Entities, any holders of Encumbrances against, in, or on all or any portion of the Acquired Assets, all non-Receivership Entity counterparties to the Assigned Contracts, the Notice Parties, the Buyer, and each of their respective affiliates, successors and assigns, and any affected third parties, including all Persons asserting an interest in the Acquired Assets, the Receivership Entities, or the Receivership Entities' estates, notwithstanding any subsequent appointment of any trustee, party, Person, or other fiduciary with respect to the foregoing parties, and as to such trustee, party, Person, or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Approval Order and the terms and provisions of the Sale Documents, and any actions taken

pursuant hereto or thereto, as well as the rights and interests granted pursuant to this Approval Order and the Sale Documents, shall continue in any case commenced under chapter 7 or chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") by the Receivership Entities and any similar state or federal proceeding, and shall be binding upon the Receivership Entities, the Buyer, and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Receivership Entities under chapter 7 or chapter 11 of the Bankruptcy Code or any similar such representative appointed in a state or federal proceeding.

b.     The provisions of this Approval Order authorizing and approving the transfer of the Acquired Assets free and clear of Encumbrances shall be self-executing, and neither the Receiver nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Approval Order.

c.     All (i) entities, including all filing agents, filing officers, title agents, title companies or title agents, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state and local officials, and (ii) other Persons, in each case, who may be required by operation of Law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets, are hereby authorized and directed to take any such actions in connection with the Sale Transaction or this Approval Order, and this Approval Order shall be binding upon such Persons. All Persons described in this paragraph are authorized and specifically directed to strike all recorded Encumbrances (other than Permitted Liens and Assumed Liabilities) against the

Acquired Assets from their records, official and otherwise. All such Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Encumbrances or to otherwise consummate the Sale Transaction contemplated by this Approval Order, the Purchase Agreement, or any Sale Document.

      d.     This Approval Order shall be effective as a determination that, on the Closing Date, all Encumbrances (other than Permitted Liens and Assumed Liabilities) existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged, extinguished, and terminated. Except with respect to Permitted Liens and Assumed Liabilities, all Persons (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, Notice Parties, and other creditors holding Encumbrances (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Receivership Entities, the Acquired Assets, the ownership, sale, or operation of the Acquired Assets and the business prior to the Closing Date, or the transfer of Acquired Assets to the Buyer, including any of the Buyer's successors and assigns, are hereby forever barred, estopped, and permanently enjoined from asserting such Encumbrances against the Receiver (in his capacity as Court-appointed federal equity receiver or individually), the Buyer, including any of Buyer's successors and assigns, and each of their respective property and assets, including the Acquired Assets. Except with respect to Permitted Liens and Assumed Liabilities, following the Closing Date, none of the parties listed in the preceding sentence and no holder of any Encumbrance shall interfere with the Buyer's (or its successor's or assign's) title to or use and enjoyment of the Acquired Assets based on or related to any such Encumbrance.

e.      Except for Assumed Liabilities and Permitted Liens, and as provided below with respect to FCS, as applicable, if any Person has filed financing statements, mortgages, mechanics', materialman's, or other similar Liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Acquired Assets that are purchased by the Buyer pursuant to the Sale Documents and this Approval Order, then such Person shall (i) execute such documents and take all other actions as may be reasonably necessary to release their respective Encumbrances in the Acquired Assets, and (ii) upon reasonable request by the Receivership Entities or the Buyer, promptly deliver to the Receiver (or the Buyer, if relevant), in proper form for filing and executed by the appropriate parties, termination statements or instruments of satisfaction or release of all Encumbrances (collectively, the "Release Documents") that such Person has with respect to such Acquired Assets. Notwithstanding the foregoing, if any Person (other than FCS) that has filed financing statements, mortgages, mechanics', materialman's, or other similar Liens, *lis pendens*, or other documents or agreements evidencing Encumbrances (other than Assumed Liabilities and Permitted Liens) against or in the Acquired Assets, shall not have delivered to the Receivership Entities, prior to the Closing Date of the Sale Transaction, in proper form for filing, and executed by the appropriate parties, the Release Documents that such Person has with respect to such Acquired Assets, then in such case, only with regard to the Acquired Assets that are purchased by the Buyer pursuant to the Sale Documents and this Approval Order, (a) the Buyer is hereby authorized and empowered, and granted power of attorney, to execute and file, or to cause to be executed and filed, such Release Documents on behalf of such Person with respect to the Acquired Assets that are necessary or appropriate to effectuate the Sale Transaction, any related agreements, and this Approval Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and

all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all applicable governmental units or as the Receiver or Buyer may determine are necessary or appropriate, and (b) the Buyer is hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of this Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release, discharge, and termination of all Encumbrances (other than Permitted Liens and Assumed Liabilities) against the Buyer and the applicable Acquired Assets; provided, that Buyer and FCS, as applicable, shall each agree on the form of Release Documents with respect to the Liens and Claims of FCS. This Approval Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

       f.      All third-party Persons that are presently in possession of some or all of the Acquired Assets are hereby directed to promptly surrender possession of such Acquired Assets upon the request of the Receiver or the Buyer.

5.    **Good Faith.** The Receiver (including, without limitation, his attorneys, professionals, and other agents) and the Buyer (including, without limitation, its equity owners, officers, directors, employees, attorneys, professionals, and other agents thereof) have not engaged in any action or inaction that would cause or permit the Sale Transaction to be avoided under applicable Law. Entry into the Purchase Agreement is undertaken by the parties thereto without collusion and in good faith. The reversal or modification on appeal of the authorization provided herein to enter into the Sale Documents and consummate the Sale Transaction shall not affect the validity of such Sale Transaction unless such authorization is duly stayed pending such appeal.

6.    **No Successor or Transferee Liability.**

      a.    The Sale Transaction contemplated by the Sale Documents does not cause there to be, and there is not (a) a consolidation, merger, or *de facto* merger of the Buyer, on the one hand, with or into the Receivership Entities or the Receivership Entities' estates, on the other hand, or *vice versa*, (b) a substantial continuity between the Buyer, on the one hand, and the Receivership Entities or the Receivership Entities' estates, on the other hand, (c) a common identity of shareholders or otherwise between the Buyer, on the one hand, and the Receivership Entities or the Receivership Entities' estates, on the other hand, or (d) a mere continuation of the Receivership Entities or the Receivership Entities' estates, on the one hand, with the Buyer, on the other hand. The Buyer shall not be deemed, as a result of any action taken in connection with the Sale Documents, the consummation of the Sale Transaction, or the transfer, operation, or use of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Receivership Entities; (b) have, *de facto* or otherwise, merged with or into the Receivership Entities; or (c) be an *alter ego* or a mere continuation or substantial continuation or successor in any respect of the Receivership Entities, including within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, worker's compensation, unemployment insurance, environmental, or other Law, rule, or regulation (including filing requirements under any such Laws, rules, or regulations), or under any products liability Law or doctrine with respect to the Receivership Entities' Liability under such Law, rule, or regulation or doctrine.

      b.    Except as expressly provided in the Purchase Agreement with respect to Permitted Liens and Assumed Liabilities and post-closing obligations under the Purchase Agreement or as to rights otherwise arising or preserved pursuant to this Order, including the rights

of Liberty Mutual Insurance Company preserved pursuant to this Order, the Buyer shall have no Liability whatsoever with respect to the Receivership Entities' (or their predecessors' or affiliates') business or operations or any of the Receivership Entities (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious Liability of any kind or character, or based upon any theory of labor Law, employment Law, ERISA and benefits Law, antitrust, environmental, successor or transferee liability, dedication interests, *de facto* merger or substantial continuity, labor and employment, or products liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any Liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the business prior to the Closing Date. The Buyer shall have no Liability or obligation under the WARN Act (29 U.S.C. §§ 2101 *et seq.*), CERCLA, or any foreign, federal, state, or local labor, employment, or environmental Law, whether of similar import or otherwise, by virtue of the Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities.

   c. Except as expressly set forth in the Purchase Agreement with respect to Permitted Liens and Assumed Liabilities and the rights preserved hereunder, the transfer of the Acquired Assets, including, without limitation, the assumption, assignment, and/or transfer of any Assigned Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer or any of its Representatives (in such capacity) having any Liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any interest whatsoever, whether arising under any doctrines of successor liability, transferee or vicarious

liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment, setoff, or otherwise.

       d.    The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Transferee Liability of the Buyer.

       e.    Except as expressly provided in the Purchase Agreement, including with respect to the Assumed Liabilities, nothing in this Approval Order or the Purchase Agreement shall require the Buyer to (a) continue or maintain in effect, or assume any Liability in respect of, any employee, pension, welfare, fringe benefit, or any other benefit plan, trust arrangement, or other agreements to which the Receivership Entities or their affiliates are a party or have any responsibility therefor, including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment, or (b) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of, any employee benefit plan, arrangement, or agreement (including pension plans) or the termination of any such plan, arrangement, or agreement. For the avoidance of doubt, notwithstanding the consummation of the Sale Transaction and the employment by the Buyer of individuals previously employed by the Receivership Entities, the Buyer shall not have any obligations or Liabilities to any employee of the Receivership Entities or in respect of any employee benefits owing to any employee of the Receivership Entities. Additionally, for the avoidance of doubt, notwithstanding the consummation of the Sale Transaction and the engagement by the Buyer of vendors previously retained, engaged, or hired by the Receivership Entities, the Buyer shall not have any obligations or Liabilities to any vendor of the Receivership

Entities, including, without limitation, in respect of any past due amounts or obligations under existing Contracts of the Receivership Entities (except for Assumed Liabilities).

        f.     Effective upon the Closing Date, other than with respect to Assumed Liabilities and Permitted Liens and post-Closing obligations under the Purchase Agreement and the rights preserved hereunder, all Persons are hereby forever prohibited and permanently enjoined from commencing or continuing in any matter any action or other proceeding, the employment of process, or any act (whether at law or in equity, in any judicial, administrative, arbitral, or other proceeding) against the Buyer, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (a) Encumbrance or (b) Successor or Transferee Liability, including the following actions with respect to clauses (a) and (b):  (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Encumbrance; (iv) asserting any setoff, right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, or would adversely affect or interfere with the provisions of this Approval Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such Acquired Assets.

     Except as set forth in the foregoing paragraph, notwithstanding anything to the contrary in this Approval Order, the Receivership Entities are not releasing any Encumbrances, actions, Claims, demands, causes of action, Liabilities, losses, suits, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminutions in value,

disbursements, expenses, and other obligations of any kind or nature whatsoever, in each case, existing as of the date of entry of this Approval Order, whether known or unknown, whether contingent or non-contingent, whether at law, in equity or otherwise, that the Receivership Entities have or may have against any party other than the FCS Parties.

7.    **Assigned Contracts.**

(a)    The Receivership Entities' assignment and transfer to the Buyer of the Assigned Contracts is hereby authorized and approved in full. From and after the date of the Purchase Agreement until 5:00 p.m. (prevailing Eastern Time) on the Final Determination Date, Buyer may make such additions or deletions to Schedule 1.01(h), the list of Assigned Contracts, including to (a) remove any Contract listed on Schedule 1.01(h), (b) add to Schedule 1.01(h) any additional Contract to which any of the Receivership Entities is a party, or (c) change any Cure Amount listed on Schedule 1.01(h). The Buyer shall pay all Cure Amounts to the applicable Contract counterparty on the date the Assigned Contract is assigned and/or transferred to the Buyer. The Receivership Entities are authorized and empowered to, and upon the Closing shall, assign and transfer each of the Assigned Contracts to the Buyer free and clear of all Encumbrances (except as expressly set forth in the Purchase Agreement with respect to Permitted Liens and Assumed Liabilities). The Assigned Contracts shall remain in full force and effect. The payment of the applicable Cure Amount (if any) shall (i) effect the cure of all defaults existing under the applicable Assigned Contract as of the Closing Date and (ii) compensate the counterparty to such Assigned Contract for any actual pecuniary loss to such counterparty resulting from such default. Accordingly, on and as of the Closing Date, other than payment of the applicable Cure Amount, the Buyer shall have no further Liabilities or obligations to the non-Receivership Entity parties to the Assigned Contract, and such non-Receivership Entity Contract counterparties shall be forever

enjoined and barred from seeking any amounts or Claims that arose, accrued, or were incurred at any time on or prior to the Closing Date other than with respect to any Assumed Liabilities, which shall be limited to the Cure Amount with respect to any Liabilities or obligations incurred or arising prior to the Closing Date. All Contract counterparties shall be deemed to have consented to such assignment and transfer regardless of whether the Contract requires approval for its assignment.

(b)     To the extent that any provision in any Assigned Contract that is assigned pursuant to this Approval Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption or assignment, or (b) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following:  (i) the insolvency or financial condition of the Receivership Entities at any time before the Closing Date, (ii) the Receivership Entities' assignment of such Assigned Contract, or (iii) the consummation of the Sale Transaction, then such provision shall be deemed modified so as to not entitle the Contract counterparty thereto to prohibit, restrict, or condition such assignment, to modify or terminate such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the applicable Contract counterparty thereto to recapture such Assigned Contract, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

(c)     Upon the assignment of each Assigned Contract, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Receivership Entities in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the

provisions of this Approval Order. Upon the assignment of each Assigned Contract, the Buyer shall be deemed to be substituted for the Receivership Entities as a party to the applicable Assigned Contract.

(d)     The Assigned Contracts will remain in full force and effect, and upon the payment of the applicable Cure Amount, if any, no default shall exist, or be deemed to exist, under the Assigned Contracts as of the date of assignment of each Assigned Contract, nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

(e)     The right of the Buyer to modify Schedule 1.01(h) with respect to the Assigned Contracts is hereby approved. Notwithstanding anything in this Approval Order to the contrary, on the date any Contract is assigned and/or transferred to the Buyer, such Contract shall thereafter be deemed an Assigned Contract for all purposes under this Approval Order and the Purchase Agreement.

(f)     If the Buyer designates a Contract as an "Assigned Contract" in accordance with the Purchase Agreement, (a) the Purchase Agreement (and the applicable schedules thereto) shall be deemed amended to include (i) such Contract as an Assigned Contract and (ii) all Cure Amounts and any Liabilities and obligations under the Assigned Contract incurred after the Closing Date as Assumed Liabilities and (b) the Receiver shall serve a notice (the "Cure Notice") on the counterparties to such Contract notifying such counterparties of the Receivership Entities' intention to assign to Buyer such Contract, including the proposed Cure Amount. The Contract counterparties to such Contract shall have seven (7) calendar days from the date of such Cure Notice to file and serve on the Receiver and the Buyer an objection to the assignment of its Contract. If the Contract counterparties, the Receiver, and the Buyer are unable to reach a

consensual resolution with respect to a timely served objection, the Receiver will seek an expedited hearing before this Court to seek approval of the assignment of such Contract. If no objection to the designation of a Contract as an Assigned Contract, the assignment and/or transfer of a Contract to the Buyer, or the proposed Cure Amount is timely served on the Receiver and the Buyer, the Receiver shall be authorized to assign and/or transfer the applicable Contract to the Buyer pursuant to this Approval Order. The Receiver and the Buyer shall execute, acknowledge, and deliver such other instruments and take commercially reasonable efforts as are reasonably practicable for the Buyer to assume the rights and obligations under any Assigned Contract, including with respect to payment of the applicable Cure Amount (if any).

(g)     All counterparties to the Assigned Contracts shall be deemed to have consented to the assignment and transfer of the Assigned Contracts, and the Buyer shall enjoy all of the Receivership Entities' rights, benefits and privileges under each Assigned Contract as of the applicable date of such assignment and/or transfer without the necessity to obtain any non-Receivership Entity party's written consent to the assignment and/or transfer thereof.

8.    **Other Provisions.**

a.     <u>Closing Payment</u>. At the Closing of the Sale Transaction, the Buyer shall pay to the Receiver the Purchase Price set forth in the Purchase Agreement.

b.     <u>Assumed Liabilities</u>. In accordance with the Purchase Agreement, upon Closing, the Buyer shall assume the Assumed Liabilities set forth in the Purchase Agreement. The Assumed Liabilities shall include, without limitation, outstanding fees and expenses, to the extent set forth in the Purchase Agreement, including Schedule 1.01(hh), of Michael Fuqua, in his capacity as Receiver, with respect to administration of the Receivership Estate, GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services, Reed Smith LLP,

King & Spalding LLP, Akin Gump Strauss Hauer & Feld LLP, and Frank Bonini, Esq (collectively, the "Receivership Expenses"), which Receivership Expenses shall be paid in accordance with the terms set forth in the Purchase Agreement.

c.    Excluded Liabilities. Except as to rights otherwise arising or preserved pursuant to this Order, all persons, all governmental units, and all holders of Encumbrances (other than holders of Assumed Liabilities and Permitted Liens), including those based upon or arising out of the Excluded Liabilities (as defined in the Purchase Agreement), are hereby barred and estopped from taking any action against the Receiver, the Buyer (including its successors or assigns), or the Acquired Assets to recover property on account of any Encumbrances or on account of any Liabilities of the Receivership Entities other than Assumed Liabilities and Permitted Liens. All Persons holding or asserting any Encumbrances with respect to the Excluded Assets (as defined in the Purchase Agreement) are hereby prohibited from asserting or prosecuting such Encumbrances against the Receiver, the Buyer, or the Acquired Assets for any Liability whatsoever associated with the Excluded Assets.

d.    No Bulk Sales; No Brokers. No bulk sales Law or any similar Laws of any state or other jurisdiction shall apply in any way to the Sale Transaction. Other than the professionals retained by the Receivership Entities pursuant to orders of this Court, no brokers were involved in consummating the Sale Transaction, and (except as otherwise provided herein) no brokers' commissions shall be due to any Person in connection with the Sale Transaction.

9.    **Failure to Specify Provisions; Conflicts**. The failure to specifically mention any particular provision of the Purchase Agreement or any related agreements in this Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the Receiver, and the Buyer that the Purchase Agreement and any related agreements are

authorized and approved in their entirety with such amendments thereto as may be made by the parties thereto in accordance with this Approval Order.

10. **Further Assurances**. From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments, and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Buyer its right, title, and interest in and to the Acquired Assets.

11. **Governing Terms**. To the extent this Approval Order is inconsistent with any prior order or pleading in the Receivership Action, the terms of this Approval Order shall govern. To the extent there are any inconsistencies between the terms of the Purchase Agreement or any Sale Document, on the one hand, and any prior pleading (including the Sale Motion) on the other hand, the terms of the Purchase Agreement or the applicable Sale Document shall govern, as applicable. To the extent there is any inconsistency between the terms of this Approval Order and the terms of the Purchase Agreement (including all ancillary documents executed in connection therewith) or the Sale Motion, the terms of this Approval Order shall govern.

12. **Modifications**. The Purchase Agreement, Sale Documents, and any related agreements, documents, or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment, or supplement does not have a material adverse effect on the Receivership Entities.

13. **Name Change**. Buyer may, within 60 days following the Closing Date, change the name of each of the Receivership Entities to a name that was not included as part of the Acquired Assets.

14. **No Liability of Receiver**. IN CONSUMMATING THE SALE TRANSACTION, THE RECEIVER IS ACTING SOLELY IN HIS CAPACITY AS FEDERAL EQUITY RECEIVER, AND NO DEBTS OF THE RECEIVERSHIP ENTITIES OR THEIR ESTATES ARE DEBTS OF THE RECEIVER. IN NO EVENT SHALL THE RECEIVER OR HIS PRINCIPALS, AGENTS, CONTRACTORS, DIRECTORS, OFFICERS, REPRESENTATIVES, OR ATTORNEYS INDIVIDUALLY HAVE ANY PERSONAL LIABILITY OR OBLIGATIONS WITH RESPECT TO THE SALE, INCLUDING, FOR THE AVOIDANCE OF DOUBT, WITH RESPECT TO ANY TAXES (WHETHER INTERNATIONAL, FEDERAL, STATE, OR LOCAL) ARISING, ACCRUING, OR PAYABLE UNDER, OUT OF, IN CONNECTION WITH, OR IN ANY WAY RELATING TO THE SALE TRANSACTION OR THE OPERATION OF THE ACQUIRED ASSETS OR THE BUSINESS PRIOR TO THE CLOSING DATE. FOR THE AVOIDANCE OF DOUBT, THE RECEIVER SHALL NOT BE LIABLE UNDER THE FEDERAL PRIORITY STATUTE, 31 U.S.C. § 3713, AS THE RECEIVER IS NOT AWARE OF ANY OBLIGATIONS OWED TO THE UNITED STATES AND THE TAXES (IF ANY) OWED ON THE SALE TRANSACTION ARE JUNIOR IN PRIORITY TO THE LIENS AND SECURITY INTERESTS OF FCS AND AITHRE UNDER THE TAX LIEN ACT, 26 U.S.C. § 6323.

15. **Discharge and Release of Receiver**. The Receiver shall be, and hereby is, deemed to be discharged as the Court-appointed Receiver for the Receivership Entities upon the (i) consummation of the Sale Transaction contemplated by this Approval Order; (ii) the filing of final tax returns for the Receivership Entities' estates; and (iii) the filing of the Receiver's final accounting as set forth below. Within thirty (30) days after the later of consummation of the Sale Transaction and transfer of title to the Acquired Assets to the Buyer, the Receiver shall be, and

hereby is, directed to file with the Court and serve upon the Notice Parties the Receiver's final accounting.

16.    **No Stay of Approval Order; Further Instruments; Appeals**. Notwithstanding any applicable Law or rule to the contrary, including, without limitation, any provision of Fed. R. Civ. P. 62(a) that requires a stay of enforcement of this Approval Order, or any motion for reconsideration or time for appeal, this Approval Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Neither the Receivership Entities nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Approval Order. Any party objecting to this Approval Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing or risk its appeal being foreclosed as moot.

17.    **Notice of Sale Closing Date**. Within three (3) Business Days of the occurrence of the Closing of the Sale Transaction, the Receiver shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 2** (the "Notice of Sale Closing Date").

18.    **Retention of Jurisdiction**. This Court shall retain jurisdiction to (i) interpret, implement, and enforce the terms and provisions of this Approval Order, and the Purchase Agreement and Sale Documents, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, (ii) compel delivery of the Acquired Assets to the Buyer, (iii) enforce the injunctions and limitations of Liability set forth in this Approval Order, and (iv) decide any issues or disputes concerning this Approval Order and the Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the

interpretation of the terms, conditions, and provisions hereof and thereof, and the status, nature, and extent of the Acquired Assets.

19.     The Buyer has standing to seek to enforce the terms of this Approval Order.

20.     The Receiver (until discharged) is authorized to take all actions necessary or appropriate to effectuate or enforce the relief granted pursuant to this Approval Order.

21.     **Receivership Stay**. The Receivership Stay provided in paragraph 4 of the Receivership Order (*see* Doc. 117, ¶ 4) is hereby extended until fourteen (14) days after the later of the Closing Date or governmental approval of the transfers of the FCC License and the NOAA License to Buyer.

22.     **Filing of Approval Order in other Federal Districts**. Pursuant to 28 U.S.C. § 1692, counsel for the Receiver shall file a copy of this Approval Order in all United States Federal Districts in which the Receiver knows that the Receivership Entities have property.

23.     **Liberty Mutual**

      (a)     On October 12, 2023, Liberty Mutual Insurance Company ("LMI") filed its *Limited Objection of Liberty Mutual Insurance Company to the Receiver's Motion for Entry of an Order (I) Authorizing and Approving (A) the Sale of Substantially All of the Receivership Entities' Assets, Free and Clear of Liens, Claims, Rights, Encumbrances and Other Interests and (B) the Asset Purchase Agreement with LTS Systems, LLC; (II) Further Extending the Receivership Stay; and (III) Granting Related Relief, and Request for Leave to File this Limited Objection After the Sale Objection Deadline* ("Liberty Objection") [Dkt. 403] objecting to the inclusion on Schedule 1.01(h) of the Purchase Agreement of Bond No. 404234346 ("Liberty Bond") between LMI and THA and to the assignment of the Liberty Bond to the Buyer or its assignee.

(b)     The Buyer and Receiver have entered into Amendment No. 1 to Asset Purchase Agreement, which is approved and which, among other things removes the Liberty Bond from Schedule 1.01(h), the list of Assigned Contracts.  Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Liberty Bond will not be assigned to the Buyer absent agreement of LMI or further order of this Court, after further notice and a hearing, authorizing the assignment of the Liberty Bond to the Buyer.  For the avoidance of doubt, to the extent that the Buyer seeks to add the Liberty Bond to Schedule 1.01(h) in accordance with the terms of the Purchase Agreement after the date of this order, the provisions of Paragraph 7 of this Order will apply and LMI shall receive notice and an opportunity to object at that time to such assignment.  The Liberty Objection is resolved by consent in accordance with the terms hereof.

24.   **Settlement of PJT Response and Motion**

(a) On August 28, 2023, PJT Partners LP ("PJT") filed its *(A) Response of PJT Partners to Receiver's Sale Motion and Request for Related Relief and (B) Motion to Surcharge Collateral* [Docket No. 378] (the "Response and Motion"), asserting that PJT was owed $1,500,000 as a Transaction Fee pursuant to its Engagement Letter [Doc. 155-2] which was approved by the Court [Doc. 207] and, in the alternative, seeking to surcharge FCS Advisors, LLC's ("FCS") collateral in the same amount and to require such surcharge be paid at closing by the Buyer, or such other acquisition vehicle used by FCS for the acquisition of the Receivership Estate's assets, or by FCS (the "PJT Claims").  Other than the PJT Claims, PJT does not hold any claims related to the Receivership Entities against FCS, the Buyer, the Payor (defined below) or Mr. Robert L. Leeds, III or any of their affiliates.  FCS opposed PJT's request, asserting, among other things, that FCS did not undertake any obligations to PJT.  The Receiver also filed an opposition.  To resolve the Response and Motion, PJT, FCS, the Buyer, and Robert L. Leeds, III

have agreed to the settlement set forth in subparagraphs (b) through (f) below, which the Receiver has not opposed.

(b) As set forth on the record of the Sale Hearing, PJT has agreed to withdraw the Response and Motion in exchange for payment to PJT of $1,250,000 (One Million Two Hundred Fifty Thousand United States Dollars) in cash within 2 (two) business days of the entry of an order approving the Sale (the "PJT Settlement"). As set forth on the record of the Sale Hearing, Mr. Robert L. Leeds, III shall cause such payment to be made, by Strongbow Holdings, LLC ("Payor"), a Delaware limited liability company that is an affiliate of Mr. Leeds, for the account of the Buyer to PJT, in exchange for the transfer of the PJT Claims to the Payor.

(c) The approval of the Sale Transaction as set forth in this Approval Order is conditioned upon the Payor, within 2 (two) business days after the entry of this Approval Order, making payment in cash, for the account of the Buyer, to PJT of $1,250,000 (the "PJT Payment") pursuant to the wire instructions set forth in PJT's Engagement Letter [Docket No. 152-2]. Upon the Payor timely making the PJT Payment, counsel for PJT shall within one (1) business day notify this Court by letter filed on the docket herein, with a copy to Chambers, certifying that such payment was made and formally withdrawing the Response and Motion, at which time this Approval Order's approval of the Sale Transaction shall become effective.

(d) Immediately upon PJT's receipt of the PJT Payment, the PJT Claims, including as against the Receivership Entities, FCS, and/or the Buyer, shall be deemed to transfer to and shall transfer to the Payor.

(e) Payor shall, within two (2) business days of the entry of this Approval Order, purchase the PJT Claims directly from PJT for the sum of $1,250,000 (One Million Two Hundred Fifty Thousand United States Dollars). Buyer shall assume the liability of the PJT

Claims and shall bear total liability of $1,500,000 (One Million Five Hundred Thousand United States Dollars) thereon, without any offsets or defenses, to the Payor out of the cash realized by the Buyer from the sale of any of its assets but in any event no later than one hundred and twenty days (120 days) of the entry of this Approval Order (the "Repayment Date").  Buyer has agreed that the repayment of the assumed PJT Claims shall be secured by valid, legal, perfected lien/security interests in all Aircraft constituting the Acquired Assets (the "Security") which shall be junior to the liens of FCS with respect to the loans to the Receivership Entities pursuant to the Financing Orders (as of October 15, 2023, FCS represents that it has made principal advances on such loans to the Receivership Entities totaled $6,800,000 (Six Million Eight Hundred Thousand United States Dollars) and has covenanted to Payor that no additional principal advances will be made), but no other liens of FCS.

(f) (i) The Buyer shall not, and it shall cause no other entity or person, to move any of the Aircraft constituting the Security from their location on the date of this Approval Order, (ii) the Payor may enter into and/or file any security documents and/or filings to evidence and perfect its security interest in the Security and (iii) the Buyer shall take all measures reasonably requested by the Payor to accomplish the same.  Immediately upon Buyer's payment to Payor of $1,500,000, the PJT Claims that were transferred to Payor from PJT shall be deemed satisfied, released and discharged.

Dated: _____October 26_____, 2023
          New York, New York

                                        _____
                                        P. KEVIN CASTEL
                                        UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

Purchase Agreement

(Attached)

**EXHIBIT 2**

<u>Notice of Sale Closing Date</u>

(Attached)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                    Plaintiff,

        —against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS A,
INC., d/b/a "THORIAN HOLDINGS,"

                                    Defendants.

21 Civ. 6995 (PKC)

**Re: Doc. [•]**

## <u>NOTICE OF SALE CLOSING</u>

**PLEASE TAKE NOTICE** that on [•], 2023, the United States District Court for the Southern District of New York (the "<u>Court</u>") entered the *Order (I) Authorizing the Sale of the Receivership Entities' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, and (II) Granting Related Relief* (Doc. •) (the "<u>Approval Order</u>"),[1] thereby approving the sale of substantially all of the Receivership Entities' assets to LTS Systems, LLC, together with its designees and/or assignees (the "<u>Buyer</u>"), pursuant to that certain *Asset Purchase Agreement*, dated as of August 12, 2023, by and among the Buyer and the Receivership Entities (including all exhibits and schedules thereto, and as may be amended or modified from time to time, including pursuant to the terms of the Approval Order, the "<u>Purchase Agreement</u>"), a copy of which is attached to the Approval Order as <u>Exhibit 1</u>.

**PLEASE TAKE FURTHER NOTICE** that the sale to the Buyer, pursuant to the provisions of the Purchase Agreement, closed on [•], 2023.

**PLEASE TAKE FURTHER NOTICE** that copies of the Approval Order are available (i) for a fee through the Court's website at https://www.nysb.uscourts.gov/ referencing Case No. 21 Civ. 6995 (PKC) or (ii) for free upon request directed to counsel for the Receiver, Reed Smith LLP, 1201 N. Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Jason D. Angelo, Esq. (jangelo@reedsmith.com).

---

[1] Capitalized terms used but not defined in this notice have the meanings given in the Approval Order.

Dated: [•], 2023
New York, New York

Respectfully submitted,

REED SMITH LLP

By:     /s/ DRAFT
        Kurt F. Gwynne
        599 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 521-5400
        Facsimile: (212) 521-5450
        E-mail: kgwynne@reedsmith.com

        - and -

        Jason D. Angelo, Esq. (admitted *pro hac vice*)
        1201 N. Market Street, Suite 1500
        Wilmington, Delaware 19801
        Telephone: (302) 778-7500
        Facsimile: (302) 778-7575
        E-mail: jangelo@reedsmith.com

        *Counsel for Michael Fuqua, in his capacity as
        Receiver of Theia Group, Inc., Theia Aviation LLC,
        and Theia Holdings A, Inc.*

**EXHIBIT 3**

Amendment No. 1 to Asset Purchase Agreement